**TV–3, INC., Plaintiff,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA and Globe Indemnity Company, Defendant.**

**No. 6:98CV200.**

United States District Court, E.D. Texas, Tyler Division.

Oct. 30, 1998.

Sally Christine Helppie, Bell Nunnally & Martin, Dallas, TX, for Plaintiff.

George Leslie Lankford, Fanning Harper & Martinson, Dallas, TX, for Defendants.

## *ORDER ON TRANSFER*

STEGER, District Judge.

Came on this day to be considered the defendant's *Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Brief* (Docket No. 6). In the Motion to Transfer Venue, the defendants request that this Court transfer this case to the Southern District of Mississippi, Jackson Division, pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, and in the interests of justice.

After careful consideration of the *Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Brief* (Docket No. 6), *Response to Defendant's Motion to Transfer and Brief in Support* (Docket No. 7), *Defendant's Reply to Plaintiff's Response and Objections to the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)* (Docket No. 11), *Surreply to Defendant's Reply to Plaintiff's Response to the Motion to Transfer Venue* (Docket No. 13), *Defendant's Position and Evidence on Mississippi Law Supporting Transfer of Venue to Mississippi* (Docket No. 21), *Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Transfer Venue* (Docket No. 22), *Defendant's Reply to Plaintiff's Supplemental Brief in Opposition to the Motion to Transfer Venue* (Docket No. 23), *Plaintiff's Response to Defendant's Position and Evidence on Mississippi Law Supporting Transfer of Venue* (Docket No. 25), and the pleadings and affidavits, the Court is of the opinion that the following order should issue.

### FACTS OF THE CASE

Plaintiff TV–3 is a Mississippi corporation with its principal place of business in Mississippi.[1] TV–3 operates the following television stations: WLBT in Jackson, Mississippi;

---

1. *Original Complaint* at ¶ 1. The Court is baffled by the plaintiff's assertion in its brief that, "None of the parties to this case are incorporated in Mississippi or Texas." *Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Transfer Venue* at 10. This is clearly *contra* the plaintiff's complaint.

KLTV in Tyler, Texas; and KTRE in Lufkin, Texas.[2] Defendant Royal Insurance Company of America is an Illinois corporation with its principal place of business in Illinois.[3] Defendant Royal does business in all fifty states, including Mississippi and Texas. Defendant Globe Indemnity Company is a Delaware corporation with its principal place of business in North Carolina. Defendant Globe regularly conducts business in Texas.[4]

Plaintiff TV-3 operates tall broadcasting towers, ranging up to 2,000 feet in height, to broadcast the signals for its television stations. TV-3 also leases space on the towers to third parties.[5]

The plaintiff alleges that, since March 1996, the defendant insurance companies have insured all TV-3 properties in Texas and Mississippi through a single contract of insurance.[6] TV-3 maintains that the policy protects against damage to any property, including the broadcasting towers.

The plaintiff further alleges that the defendants sent notice of non-renewal in 1996, requiring certain inspection and maintenance work on the towers.[7] After personal inspection by the defendants' representatives yielded an agreed course of action, the policy was renewed.[8]

The plaintiff contends that the defendants reviewed proposed work on the towers and approved the specific work to be done, without suggesting that the work would not be covered by the policy.[9]

On October 23, 1997, the Jackson, Mississippi, tower, collapsed just as LDL Communications, a Canadian corporation, began the approved work.[10] The tower was completely destroyed.[11]

TV-3 requested that the defendants replace the tower pursuant to the property coverage provision, at an estimated cost of three million dollars.[12] Defendants denied coverage and the plaintiff brought suit for, *inter alia*, breach of contract, breach of the duty of good faith and fair dealing, fraud, and unfair or deceptive trade practices. The defendants generally deny, relying on an exception in the policy for towers "in the course of construction or undergoing repairs or alterations, other than routine maintenance."[13]

## ANALYSIS

The defendants seek a discretionary transfer for the convenience of the parties and witnesses to the United States District Court for the Southern District of Mississippi, Jackson Division (hereinafter, "the Southern District"), pursuant to 28 U.S.C. § 1404(a). The Court finds that venue is proper in the Southern District and is of the opinion that a transfer to that court should be granted.

Venue is clearly proper in the Southern District because a civil diversity action may be brought: (1) in any district in which a defendant resides; (2) in any district in which a substantial part of the events or omissions giving rise to the claim occurred; and (3) in any district in which a defendant is subject to personal jurisdiction at the time the action is commenced. The defendants correctly assert that venue is proper in the Southern District because, clearly, a substantial part of the events giving rise to the claim occurred in that district.[14]

■ In cases where a change of venue is sought from a court of proper venue, 28 U.S.C. § 1404(a) guides the Court's discretion. That statute provides that "[f]or the convenience of parties and witnesses, in the

2. *Original Complaint* at ¶ 8.

3. *Original Complaint* at ¶ 2.

4. *Original Complaint* at ¶ 3.

5. *Original Complaint* at ¶ 9.

6. *Original Complaint* at ¶ 10.

7. *Original Complaint* at ¶ 11.

8. *Original Complaint* at ¶ 12.

9. *Original Complaint* at ¶ 13.

10. *Original Complaint* at ¶ 14.

11. *Original Complaint* at ¶ 15.

12. *Original Complaint* at ¶ 15, 18.

13. *Defendant's Original Answer* at ¶ 30.

14. 28 U.S.C. § 1391(a).

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As the statute reveals, there are three primary factors for a district court to consider when making a decision under this provision: convenience of the parties, convenience of the witnesses, and the interest of justice. *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer venue according to an individualized case-by-case consideration of convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

■ A defendant who desires a transfer of venue carries the burden to convince a transferor court that a transfer would be more convenient. *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2nd Cir.), *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950). The quantum of proof necessary has sometimes been described to be as stringent as "clear and convincing evidence." *Headrick v. Atchison*, 182 F.2d 305, 310 (10th Cir. 1950). Consequently, before this Court can order a transfer of this action, the defendants must carry a strong burden to prove that these factors clearly favor such a change.[15] Some of the relevant factors this Court is to consider in making a transfer decision include:

(A) The plaintiff's choice of forum;

(B) The availability of compulsory process for the attendance of unwilling witnesses;

(C) The cost of obtaining the attendance of willing witnesses;

(D) The accessibility and location of sources of proof;

(E) The location of counsel;

(F) The relative congestion of the Court's dockets;

(G) The relation of the community in which courts and the jurors are required to serve to the occurrence giving rise to the suit;

(H) The determination of which state's law will apply when the law of two states could apply; and

(I) The time, cost, and ease with which the trial can be conducted, and all other practical considerations relative to the trial.

*Fletcher v. Southern Pac. Transp. Co.*, 648 F.Supp. 1400, 1401 (E.D.Tex.1986), *citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Other factors and practical considerations include the nature of the testimony from witnesses who must travel or be transported, the place of the occurrence giving rise to the suit, the distance between the respective courts, and the parties' relative financial ability to bear the expense of trial in either district. Each of the above factors, A through I, will be analyzed separately.

**(A) The plaintiff's choice of forum.**

■ First, the plaintiff's choice of forum is considered a strong factor. *Greiner v. American Motor Sales Corp.*, 645 F.Supp. 277, 279 (E.D.Tex.1986). Typically, the balance of convenience or justice must clearly preponderate against this choice to justify a § 1404(a) transfer. *Coons v. American Horse Show Association, Inc.*, 533 F.Supp. 398, 400 (S.D.Tex.1982). However, where none or few of the operative facts underlying the cause of action occur within the forum chosen by the plaintiff, the chosen forum is entitled to less consideration. *Fletcher v. Exxon Shipping Company*, 727 F.Supp. 1086, 1087 (E.D.Tex.1989); *Fletcher v. Southern Pacific Transp. Co.*, 648 F.Supp. 1400, 1404 (E.D.Tex.1986). Because the facts underlying this cause of action did not occur within the Eastern District, the plaintiff's choice of forum will receive less deference from the Court in the instant case. Never-

---

**15.** The plaintiff argues that the defendants offer no evidence that the present forum is inconvenient. *Plaintiff's Response to Defendant's Position and Evidence on Mississippi Law Supporting Transfer of Venue* at 5. The Court disagrees. Nor will the Court require a higher quantum of the defendants than that required by the statute, as the plaintiffs advocate, requiring proof of "inconvenience." Although the standard is high, the statute requires consideration only of the interests of the parties, the witnesses, and justice.

theless, the Court does acknowledge the right of the plaintiff to make a strategic venue choice, as long as it is statutorily authorized. Therefore, the Court finds that this factor weighs slightly in favor of the plaintiff. However, the Court also finds that the forum chosen by the plaintiffs, although important, is not the most important factor in regard to transfer under the facts and circumstances in this case.

### (B) The availability of compulsory process for the attendance of unwilling witnesses.

The second and third elements involve the costs associated with bringing willing witnesses to trial, and the availability of compulsory processes to bring unwilling witnesses to trial. These factors are very important, possibly even the most important of the list of factors. *Fletcher*, 648 F.Supp. at 1401–02. However, the evaluation of these factors should not rest on a "battle of numbers" but should be directed by the content and quality, rather than quantity, of their testimony. *Id.* at 1402. Most potential witnesses, other than those employed by the defendant insurance companies at their principal places of business (neither of which are in Texas or Mississippi),[16] will be subject to compulsory process if trial is held in Jackson. However, many of these same witnesses would not be subject to compulsory process in Tyler.[17] As for the defendants' employees related to this controversy, they must travel to either Tyler or Jackson, and neither party has pointed to the possibility of compulsory process for these witnesses in either forum. Therefore, this factor weighs strongly in favor of transfer.

### (C) The cost of obtaining the attendance of willing witnesses.

The plaintiff's principal place of business as well as the office of the producing agent in this case are in Jackson, Mississippi. Even the potential witnesses for the plaintiff that reside in Tyler, Texas, maintain offices in Jackson, Mississippi.[18] Since the majority of witnesses would have to travel a great distance to Tyler, at potentially great cost in time and money, willing witnesses would be better able to testify in Jackson. Therefore, the Court finds that these considerations weigh strongly in favor of transfer.

### (D) The accessibility and location of sources of proof.

The fourth factor involves the accessibility and location of sources of proof. The defendant alleges that documents would have to be transported from Jackson to Tyler if trial is held in Tyler.[19] The plaintiff does not controvert this contention. However, common sense indicates that documents relevant to this controversy would be more readily available in Jackson than in Tyler. Therefore, this factor, too, weighs in favor of transfer.

---

16. *Defendant's Original Answer* at ¶ 1.

17. *Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Brief* at 3–4.

18. *Manzer Affidavit* at ¶ 2. Both parties have fiercely fought over supporting affidavits. The plaintiff first objected to *Affidavit of Marcea Hammock* attached to *Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Brief* by filing *Objections to the Affidavit of Marcea Hammock* (Docket No. 10). The Court overrules the plaintiff's trite objections to the affidavit. However, the Court has not relied upon the affidavit in ruling on the motion to transfer.

The defendants also attached the *Affidavit of Billy F. Cartwright to Defendant's Reply to Plaintiff's Response and Objections to the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)*. The plaintiff objected, contending that Local Rule CV–7(b) requires service and filing of an affidavit containing facts not appearing in the record with the motion it supports. The defendant subsequently filed *Defendants' Motion for Leave to File Affidavit of Billy F. Cartwright in Support of Motion to Transfer Venue* (Docket No. 15). Because it is clearly within the Court's discretion to do so, the Court hereby grants the motion for leave to file the affidavit and orders the District Clerk to file the Affidavit prior to entry of this order.

The plaintiff's objections appear particularly hollow considering that the Court has allowed both parties to file seemingly innumerable briefs on the transfer and choice-of-law issues. Once again, however, the Court would grant transfer, even without consideration of the Affidavit, but based solely on the complaint.

19. *Defendant's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Brief* at 5.

**(E) The location of counsel.**

 The fifth factor involves the location of counsel. The parties have retained Dallas, Texas, counsel, who may be inconvenienced by transfer. However, location of counsel is a factor to which this Court usually assigns little weight since the inconvenience to the parties of finding local counsel (if necessary) is usually slight. *See Scheinbart v. Certain–Teed Products Corp.,* 367 F.Supp. 707, 710 (S.D.N.Y.1973) ("The inconvenience caused plaintiff due to the need to retain local counsel in the transferee district is of little, if any, weight on a motion to transfer"). In the potential trial of this case, either witnesses or attorneys will have substantial travel time. Local counsel in Jackson, Mississippi, could assist Dallas counsel in filings and court appearances. Therefore, the Court does not find that this factor weighs strongly in favor of retention or transfer of the case.

**(F) The relative congestion of the Court's dockets.**

The sixth factor requires this Court to examine the relative congestion of the courts' dockets. The Court's docket is crowded and trial of this case has been continued until January 1999. The Court is not aware of any docket congestion in the Southern District of Mississippi and the parties have pointed to none. Without contrary evidence of a crowded docket in Jackson, Mississippi, the Court finds that this factor favors transferring the instant case to the Southern District.

**(G) The relation of the community in which courts and the jurors are required to serve to the occurrence giving rise to the suit.**

This factor allows consideration of "local interest" in a case when ruling on a § 1404(a) motion. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1061 (1947). The defendants likewise contend that the collapse of the tower was a newsworthy event in Jackson, Mississippi, but not in Tyler, Texas.[20] The defendants argue that this evidence of local interest weighs toward transfer. The Court agrees that the local interest of Jackson, Mississippi, in this controversy exceeds that of Tyler, Texas, thus slightly favoring transfer.

**(H) The determination of which state's law will apply when the law of two states could apply.**

 This factor allows the Court to base a transfer decision, in part, on a determination of which state's law will control. Where a controversy is to be determined by state law, a court should consider the desirability of having a case decided by a court in a state whose substantive law governs the action. *See Time, Inc. v. Manning,* 366 F.2d 690 (5th Cir.1966). "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843.[21]

 In the instant case, the Court considers this factor to be of great importance, and will therefore address the arguments of the parties in detail before weighing it for § 1404(a) analysis. The plaintiff vociferously contends that Texas law is controlling, while the defendants insist that Mississippi law must be applied. Both parties agree that, in diversity cases such as this one, the state choice of law rules for the local state court apply. *See Klaxon Co. v. Stentor Elec. Mfg.*

**20.** *Cartwright Affidavit* at ¶ 3. *See* n. 18, *supra.*

**21.** *See also Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (Assessing convenience and fairness for transfer of case are pervasively shaped by considerations such as judicial familiarity with governing laws and relative ease and practicality of trying cases in alternative forums).

*Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, the Court will look to Texas choice-of-law rules to determine which state's law applies.[22]

In deference to the plaintiff's chosen forum state, Texas, the Court will consider the plaintiff's arguments for application of Texas law. The plaintiff advocates application of the following:

(1) Restatement (Second) of Conflicts of Laws § 6 (General choice of law principles);

(2) TEX.INS.CODE Art. 21.42 (Statutory choice of law directive for insurance disputes);

(3) Restatement (Second) of Conflicts of Laws § 188 (Choice of law in breach of contract disputes); and

(4) Restatement (Second) of Conflicts of Laws § 145 (Choice of law in tort disputes).

The Court will examine these provisions individually.

### (H)(1) Restatement (Second) of Conflicts of Laws § 6.

■ Both parties agree that Restatement (Second) of Conflicts of Laws § 6 is the starting point for a choice-of-law inquiry to determine which state has the "most significant relationship" to the dispute between the parties. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (1984). The provision states, in relevant part:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law;

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) The needs of the interstate and international systems;

(b) The relevant policies of the forum;

(c) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) The protection of justified expectations;

(e) The basic policies underlying the particular field of law;

(f) Certainty, predictability, and uniformity of result; and

(g) Ease in the determination and application of the law to be applied.

The plaintiffs insist that this Court must follow a Texas statutory directive, as provided in Section 1, above. The defendants maintain that the statutory directive advocated by the plaintiff is not applicable and the Court should instead look to Factors A–G of Section 2, above. The parties' arguments for and against application of the statutory directive will be discussed in detail in (H)(2) *TEX.INS.CODE Art. 21.42*, below. The Court will now address the Restatement (Second) factors relevant to the choice of the applicable rule of law when there is no statutory directive.

The Court holds that analysis of the factors shows that Mississippi law should govern in this case. In considering the basic facts of this case—that a Mississippi insured with its principal place of business in Mississippi disputes an insurance contract negotiated, delivered, and paid in Mississippi on property in Mississippi—the Court finds that application of Mississippi, not Texas, law protects justified expectations of the parties and leads to certainty, predictability and uniformity of result.[23] This finding is also consistent with the basic policies underlying the

---

**22.** "The forum state will apply its own choice of law rules, most likely in the following priority: (1) specific statutes, (2) choice of law clauses in contracts, and (3) the forum's general choice of law rule." James P. George, *Choice of Law: A Guide for Texas Attorneys*, 25 TEX.TECH L.REV. 833, 841 (1994).

**23.** The plaintiff argues that the parties' justified expectations require application of Texas law because a majority of the covered property is in

Texas, and complaining that "the law to be applied cannot be determined by where the first covered loss happens to occur." *Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Transfer Venue* at 9. However, under this reasoning, the most logical way to meet the parties' justified expectations when a policy covers property in multiple states is to apply the law of the insured's state of incorporation or principal place of business—Mississippi.

particular field of law and the needs of the interstate and international systems.

Therefore, under the above finding, Mississippi law must control in this case unless the statutory directive advocated by plaintiff applies in this case, thus trumping the above analysis.

**(H)(2) Tex.Ins.Code Art. 21.42.**

■ The plaintiff contends that Tex.Ins. Code Art. 21.42 constitutes a "statutory directive" under Restatement (Second) of Conflict of Laws § 6(1), thus trumping the significant relationship test.

The provision states, in relevant part:

Any contract of insurance payable to any *citizen* or *inhabitant* of this State by any insurance company or corporation doing business within the state shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it become a demand) should be payable without this State, or at the home office of the company or corporation issuing the same. [emphasis added]

The plaintiffs contend that this statute renders the instant insurance contract a "contract made and entered into under ... the laws of this state." The defendants, however, insist that binding judicial interpretation of the statute precludes this result.[24] As outlined below, the Court holds that Art. 21.42 will not mandate application of Texas law in the instant contract dispute.

*(H)(2)(a) Austin Building Company v. National Union*

In *Austin Building Co. v. National Union Fire Ins. Co.,* 432 S.W.2d 697 (1968), the Texas Supreme Court interpreted Art. 21.42, holding that Kansas law applied in an insurance coverage dispute. Austin Building Company, a Texas corporation, entered into a contract with Western Light & Telephone Company for the construction of an addition

to its power station near Great Bend, Kansas. *Id.* at 699. Western obtained builder's risk insurance for both Austin and Western through National Union Fire Insurance Company. *Id.* When the dispute arose, Austin sought application of Texas law under § 21.42. *Id.* at 700. However, even though Austin, a Texas resident, was insured under the contract, the Court held that Kansas law controlled because the contract was made and executed in Kansas as to Kansas property. *Id.* at 701. The Court therefore presumed that Kansas law was to control. *Id.* The Court also noted that, in the absence of a contrary manifestation, the presumption is that the parties contract with reference to where the contract was made. *Id. See generally Fidelity Mutual Assoc. v. Harris,* 94 Tex. 25, 57 S.W. 635 (1900).

*(H)(2)(b) Howell v. American Live Stock Insurance Company*

Also critical to Art. 21.42 analysis is *Howell v. American Live Stock Insurance Company,* 483 F.2d 1354 (5th Cir.1973), controlling in the instant case. In *Howell,* the Fifth Circuit affirmed the ruling of the United States District Court for the Western District of Texas, El Paso Division, finding that New Mexico law governed a livestock insurance contract dispute despite the language of Art. 21.42. *Id.* at 1361.

In that case, the plaintiff, Howell, was a Texas citizen doing business in Texas and New Mexico. *Id.* at 1359. The horse farm was located in New Mexico. *Id.* The *Howell* court relied on the Texas Supreme Court's ruling in *Austin Building Co.,* noting that the Texas Supreme Court wrote that Art. 21.42 cannot "be given extraterritorial effect so as to apply to a policy or bond written or executed by a foreign insurer in another state, even though the insured was a citizen or resident of the state which had adopted the statute in question, and even though the foreign insurer also did other business within that state." *Howell* at 1359, *quoting Austin Building Co.,* 432 S.W.2d at 701. The *Howell* Court held that, under *Austin Building*

---

24. While unnecessary because of the Court's holding in this case, the Court notes that the defendant correctly asserts that Art. 22.42 cannot

govern the plaintiff's tort claims since the provision explicitly addresses only choice of law for contract disputes.

*Co.,* Art. 21.42 assured that Texas law will apply to contracts made between Texas citizens and insurance companies doing business in Texas *"when and only when* those contracts are made in the course of the company's Texas business." *Howell,* 483 F.2d at 1359 [emphasis original].

In *Howell,* the Fifth Circuit found that, since the contract was made and executed in New Mexico, and the insured horse was kept in New Mexico, it was "fair to assume ... that the parties intended New Mexico law to apply." *Id.* at 1361.

In the instant case, the contract was made and executed in Mississippi. The insured property which is the subject of the dispute is in Mississippi. Plaintiff TV–3 is a Mississippi corporation with its principal place of business in Mississippi. It appears unlikely from these facts that the law of any state but that of Mississippi was intended to apply to the contract. The Fifth Circuit in *Howell* refused to apply Art. 21.42 even though Howell was a Texas citizen; in this case, the plaintiff is foreign to Texas, and the argument for application of Art. 21.42 is even more tenuous than in *Howell.* Therefore, this Court will not mandate application of Texas law under Art. 21.42 as advocated by the plaintiff.

### *(H)(2)(c) Hefner v. Republic Indemnity Company*

The defendants cite *Hefner v. Republic Indem. Co. of America,* 773 F.Supp. 11 (S.D.Tex.1991) in support of the instant motion. The *Hefner* case incorporates the reasoning of *Howell* and synthesizes a test from the case law interpreting Art. 21.42: "For the statute to apply, the insurance proceeds must be payable to a Texas citizen, the policy must be issued by a company doing business in Texas, and the policy must arise in the course of the insurance company's Texas business." *Hefner,* 773 F.Supp. at 13.

In *Hefner,* the plaintiff, Robert Hefner, sought to recover as a third-party beneficiary against Republic Indemnity Company of America[25] under policies issued to Byron Lasky. *Id.* at 12. Hefner was a resident of Texas. *Id.* at 13. Lasky was a limited partner of a Texas partnership that owned the Houston apartment complex at which Hefner was injured. *Id.* at 12. Republic was a California company. *Id.* at 13. The contract was negotiated and signed in California, and, under the terms of the policy, the contract was to be performed in California. *Id.* The Court also noted that Republic's principal place of business was in California, and the premiums were paid in California by a Californian. *Id.*

The *Hefner* Court declined to utilize Art. 21.42 and apply Texas law based on the test created by *Howell. Id.* The Court noted that the contract was made and signed in California and was payable to Lasky, a California resident. *Id.* The Court also held that, despite its coverage of property in Texas, the Republic policy did not rise to the level of "doing business in Texas." *Id.* The Court therefore applied the "most significant relationship test." *Id.*

In the instant case, much as in *Hefner,* property in Texas was insured by an out-of-state insurer for an out-of-state insured. However, the facts of *Hefner* make an even more compelling argument than the instant case for application of Art. 21.42, as the incident giving rise to the dispute in that case occurred in Texas. In this case, the incident giving rise to a claim—the collapse of the tower—occurred in Mississippi. Even with this distinction, the *Hefner* Court refused to use Art. 21.42 to apply Texas law to a policy negotiated and contracted out-of-state.

### *(H)(2)(d) Hefner's Three–Part Test*

The defendants advocate use of the test formulated by the Court in *Hefner* to determine what law governs the contract claim:

(1) The insurance proceeds must be payable to a citizen or inhabitant of Texas;

---

25. Republic was an excess liability carrier. *Hefner,* 773 F.Supp. at 12. Lasky's primary insurance carrier, Mutual Fire Marine and Inland Insurance Company, was in liquidation and was to be dismissed from the suit. *Id.* The Court held that Hefner would take nothing against Republic because Hefner was not a third party beneficiary of the policy. *Id.* This holding, however, has no effect on the choice of law analysis cited by the instant defendants.

(2) The policy must be issued by a company doing business in Texas; and

(3) The policy must be issued in the course of the insurance company's Texas business.

The defendants contend that, while Royal does business in Texas, the other elements are not satisfied in the instant case.

■■■■ First of all, the defendants allege that Plaintiff TV-3 is not a citizen or inhabitant of Texas. The Court finds that TV-3 is a foreign corporation, incorporated in Mississippi with its principal place of business in Mississippi.[26] The defendants also correctly state that a permit authorizing a foreign corporation to do business in the state does not constitute such corporation as a "citizen," since an entity cannot be a citizen and a foreigner contemporaneously. *H. Rouw Co. v. Railway Express Agency*, 154 S.W.2d 143, 145 (Tex.Civ.App.—El Paso 1941, *writ ref'd*). Likewise, the mere fact that TV-3 does business within the State of Texas and has offices in the state does not render it a "citizen." *Forcum–Dean Co. v. Missouri Pacific R.R. Co.*, 341 S.W.2d 464, 465 (Tex.Civ.App.—San Antonio 1960, *writ dism'd*).

■■■■ The defendants further challenge the status of TV-3 as an inhabitant of Texas.[27] Texas case law defines a corporation as an "inhabitant" of the state where it is incorporated. "It is very generally held that a corporation is an *inhabitant* of the state under whose law it is incorporated, and that it has a *residence* wherever it conducts its ordinary business." *Pittsburg Water Heater Co. Of Texas v. Sullivan*, 115 Tex. 417, 423, 282 S.W. 576, 579 (1926) [emphasis added].

Therefore, Texas law defines an "inhabitant" much as a "citizen."

The plaintiff apparently relies on the mere fact that it operates stations in Texas to fulfill the requirements discussed above. However, this broad interpretation of Art. 21.42 stretches the imagination. Had the Texas legislature intended to extend the reach of Art. 21.42 to any business doing business in Texas, it could have used the commonly understood term, "resident." Instead, however, by using the narrow terms, "citizen" and "inhabitant," the legislature seems to have provided that Texas law may govern disputes on insurance contracts payable to Texas citizens or inhabitants regardless of the choice of law provisions included in the contract. With the explosion in growth of multistate and multinational businesses, countless foreign corporations doing business in Texas would be able to take advantage of Art. 21.42 for resolution of insurance disputes if "inhabitant" is liberally construed, as TV-3 would have it, to mean "resident."[28] This, in fact, is exactly the sort of "extraterritorial effect" proscribed by *Austin Building Company*.

### (H)(2)(e) W.R. Grace & Company v. Continental Casualty

The Court notes the opinion and subsequent per curiam opinion on petition for rehearing of the Fifth Circuit in *W.R. Grace & Co. v. Continental Cas. Co.*, 896 F.2d 865 (5th Cir.1990)[29] for further clarification of Art. 21.42 as applied to foreign corporations. In *Grace*, the Court refused to mandate the application of Texas law in a case where the

---

**26.** Under Texas law, a "foreign corporation" means a corporation for profit organized under laws other than the laws of Texas. Tex.Bus. Corp.Act Ann. Art. 1.02(A)(14) (Vernon Supp. 1998).

**27.** Surprisingly, the plaintiff failed to address the statutory threshold for Art. 21.42 analysis—that the contract of insurance be payable to a "citizen" or "inhabitant" of Texas—in either of its choice-of-law briefs.

**28.** While the plaintiff accuses the defendants of "forum shopping," it is clear that TV-3 does not have clean hands itself. A Mississippi corporation with its principal place of business in

Mississippi contesting coverage on property in Mississippi may only disingenuously argue that selection of Texas as a forum was not forum shopping. Indeed, the plaintiff blatantly asserts that it selected Texas for suit because "Texas law ... is more well-developed in this area and affords greater protection to persons harmed by the wrongful conduct of an insurance company." *Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Transfer Venue* at 6.

**29.** The case came before the Fifth Circuit on appeal from the Eastern District of Texas. *Dayton Independent School District v. National Gypsum Co.*, 682 F.Supp. 1403 (E.D.Tex.1988).

contract of insurance was payable to a foreign corporation doing business in Texas. *Id.* at 883.

In 1981, numerous Texas independent school districts sued National Gypsum Company, an asbestos manufacturer, complaining of asbestos installed in school buildings. *Id.* at 867. W.R. Grace & Co. [hereinafter, "Grace"], a manufacturer of asbestos fireproofing material, was added as-a defendant in 1984. *Id.* In 1987, Grace sought leave to file a third-party complaint against its primary insurer and eleven excess carriers. *Id.* While the Fifth Circuit reversed the District Court on other grounds, the per curiam opinion held that Art. 21.42 did not mandate application of Texas law in the case. *Id.* at 883.

The Fifth Circuit reversed the District Court's ruling that Texas law should control the contract dispute, basing its decision on the "most significant relationship" test,[30] and found that New York law should govern. *Grace*, 896 F.2d at 873. The Fifth Circuit based its holding on the following facts:

(1) Grace and three of the insurers maintained principal places of business in New York;

(2) At least one other insurer had an office in New York, and many of the others did business there;

(3) Grace's insurance broker was based in New York, and most of the policies were solicited, negotiated, and delivered in New York; and

(4) Grace paid its premiums in New York, and gave its notice of the school district's claims in New York.[31]

Despite the fact that Grace did business in Texas, the Court refused to allow application of Texas law to the contract.

In its per curiam opinion on petition for rehearing, the Court considered Art. 21.42, which Grace contended mandated application of Texas law. *Id.* at 883. The Court wrote, "We are not persuaded that the language of the statute mandates the application of Texas law in this case where the contracts of insurance are not payable to Texas citizens or inhabitants, but to W.R. Grace," a foreign corporation. *Id.* The Court also noted the decision of the Austin Court of Appeals in *American Home Assurance Co. v. Safway Steel Products Co.*, 743 S.W.2d 693 (Tex. App.—Austin 1987). In that case, the Court of Appeals held that when an insurer paid the claim of a Texas resident, but reserved the right to contest coverage with its insurer, Art. 21.42 required the application of Texas law.[32] However, the Fifth Circuit in *Grace*

---

30. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (1984).

31. *Id.*

32. The plaintiff relies heavily on the *Safway* case in its choice-of-law briefs. However, the Court finds that *Safway* is both readily distinguishable and not mandatory authority for this Court. The key distinction in *Safway*, among others, is that the Court found that Texas law should be applied to resolve a dispute as to whether the policy excluded punitive damages awarded by a Texas jury. *Safway*, 743 S.W.2d at 699. The *Safway* Court gave great weight to the fact that judgment had already been entered on damages in Texas. In support of its holding that Texas law should govern the determination of coverage for punitive damages, the Court wrote, "If we allowed appellants to dissociate themselves completely from the jurisdiction which imposed those damages, we would necessarily condone forum-shopping. Appellants could, after paying the primary personal injury action under the reservation of rights, seek a declaratory judgment in a state in which they were doing business and whose pub-

lic policy precludes insuring against punitive damages." *Id.* at 699. This Court notes that no damage award has been entered in this case in Texas, and there is no compelling reason, as in *Safway*, for Texas law to govern.

The defendants also contend that *Safway* is contrary to United States and Texas Supreme Court decisions holding that it is unconstitutional to give Art. 21.42 extraterritorial effect by applying it to an insurance contract written or signed by a foreign insurer in another state. *Defendant's Position and Evidence on Mississippi Law Supporting Transfer of Venue to Mississippi* at 12, citing *Aetna Life Ins. Co. v. Dunken*, 266 U.S. 389, 399, 45 S.Ct. 129, 69 L.Ed. 342 (1924), *Austin Bldg. Co. v. National Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (1968). The Court finds analysis of this argument unnecessary, as the *Safway* case is not analogous to the instant one. However, the Court does note, per the defendants' urging, that *Safway* concerned liability, not property, as the instant case.

Similarly, the Court also notes the decision of the Fifth Circuit in *John Hancock Mutual Life Insurance Co. v. Schroder*, 349 F.2d 406 (1965). In that case, a Massachusetts insurer not doing

distinguished *Safway* because the insurer in that case had already made payment to a Texas resident. *Grace*, 896 F.2d at 883. The *Grace* Court wrote that application of Art. 21.42 in a case where there has been no payment by the insurer to the Texas resident "would raise serious questions of constitutionality under the Commerce Clause as well as the due process clause of the fourteenth amendment."

This Court agrees with the Fifth Circuit's holding in *Grace* that application of Texas law under Art. 21.42 is not warranted when the insured is a foreign corporation, regardless of whether or not it is doing business in Texas. The provision clearly protects only "citizens" or "inhabitants" of Texas. *Safway*, a clearly distinguishable case from the one at hand, may be seen as exceptional in its holding and contrary to the great weight of authority. In the instant case, the Court holds that Art. 21.42 does not mandate application of Texas law in this contract dispute.

### (H)(2)(f) Conclusion of Art. 21.42 analysis

Based on the cases cited, this Court finds that Art. 21.42 does not mandate application of Texas law to the insurance contract dispute. TV–3 is not a citizen nor an inhabitant of Texas, and is not the type of plaintiff for which Art. 21.42 was designed to protect. Allowing application of Texas law to the contract in the instant case would be giving extraterritorial effect to Art. 21.42, and the proposed statutory directive will not trump the most significant relationship test.

### (H)(3) Restatement (Second) of Conflicts of Laws § 188.

Both parties also agree that § 188 of the Restatement (Second) of Conflict of Laws is helpful to § 6 in determining choice of law in insurance contract disputes. In the absence

of an effective contractual choice, the law of the state with the most significant relationship to the dispute should apply. Section 2 of the provision also takes the following factors into account:

(a) The place of contracting;

(b) The place of negotiation of the contract;

(c) The place of performance;

(d) The location of the subject matter of the contract; and

(e) The domicil, residence, nationality, place of incorporation and place of business of the parties.

The plaintiff attempts to transform the place of contracting for the instant insurance contract from Mississippi to Texas by tangential negotiation connections to Texas. Likewise, the plaintiff relies heavily on the fact that a "majority of the risk" [33] (or insured property) is located in Texas. These allegations will not operate to make Texas' relationship to this contract dispute more significant than that of Mississippi. The contract was largely negotiated in Mississippi, the policy was hand delivered in Mississippi, and premiums were paid out of the Mississippi business office.[34] The tower collapse which precipitated this suit occurred in Mississippi. The plaintiff was incorporated in Mississippi and has its principal place of business in Mississippi. Clearly, the overwhelming weight of the factors favors application of Mississippi law.

### (H)(4) Restatement (Second) of Conflicts of Laws § 145.

■ The plaintiff contends that a choice of law decision concerning its tort claims, including bad faith, fraud, and negligent misrepresentation, is governed by Restatement (Second) of Conflict of Laws § 145. The provision uses the "most significant relation-

---

business in Texas when it delivered a group life insurance policy to a Florida corporation in Florida could be constitutionally penalized by Texas statute based on Art. 21.42. *Id.* at 408. However, the Court distinguishes the instant case and *Schroder* because the employee in that case seeking benefits was a Texas resident and the Fifth Circuit also based its decision on a policy amendment after the insurer began doing business in Texas. The Court distinguishes *Locomotive Eng.*

*& Cond. Mut. Prot. Ass'n v. Bush*, 576 S.W.2d 887 (Tex.App.—Tyler 1979), and *General American Life Ins. Co. v. Rodriguez*, 641 S.W.2d 264 (Tex.App.—Houston [14th Dist.] 1982), for similar reasons.

**33.** *Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Transfer Venue* at 8.

**34.** *Hammock Affidavit* at ¶ 4. *See* n. 18, *supra*.

ship" test, and Section 2 allows consideration of the following factors:

(a) The place where the injury occurred;

(b) The place where the conduct causing the injury occurred;

(c) The domicil, residence, nationality, place of incorporation and place of business of the parties; and

(d) The place where the relationship, if any, between the parties is centered.

These contacts, as in the above tests, must be evaluated with an eye to "their relative importance with respect to the particular issue."

Under the factors above, § 145 clearly favors application of Mississippi law. The injury arguably occurred in Mississippi, where the tower collapsed, or the alleged economic injury arguably occurred at the plaintiff's principal place of business, also in Mississippi.[35] The second factor, the place where the conduct causing the injury occurred, could arguably be at the defendants' principal places of business, not in Texas or Mississippi.[36] Considering the plaintiff's place of incorporation and principal place of business as well as the relevant facts surrounding the insurance contract, § 145 also clearly favors application of Mississippi law.

### (H)(5) Conflict of Laws—Conclusion.

The Court finds that, based upon the above analysis, Mississippi law should control in this case. The statutory directive advocated by plaintiff should not be applied in this case; therefore, the "most significant relationship" test governs the choice-of-law analysis. This test clearly favors application of Mississippi law.

Because Mississippi law controls this case, the Court also finds that this factor strongly favors transfer of the case, as the Southern District of Mississippi, Jackson Division, will be more familiar with Mississippi law than this Court.

### (I) The time, cost, and ease with which the trial can be conducted, and all other practical considerations relative to the trial.

The final factor includes the time, cost, and ease with which the trial can be conducted, and all other practical considerations relative to the trial. As previously stated, because parties, witnesses, and records are in the Southern District, transfer of this case to the Southern District could result in significant savings in time and expense of trial. This factor also weighs heavily in favor of transfer.

### CONCLUSION

The Court has carefully considered all the factors in this case as required by 28 U.S.C. § 1404(a) as well as those delineated by the Fifth Circuit and is of the opinion that a discretionary transfer to the Southern District of Mississippi, Jackson Division, for the convenience of the parties is justified. The balance of the convenience of the parties and the interests of justice favors transferring this case to that forum.

The Court finds that this case was properly filed in the Eastern District but considerations of convenience to the parties and the interest of justice requires transfer to the Southern District of Mississippi, Jackson Division. The defendants' motion to transfer is granted.

---

**35.** The plaintiff contends that Texas law should be applied because "most of the risks and operations insured under the Policy are located in Texas." *Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Transfer Venue* at 9. However, TV–3 cites no controlling authority for the proposition that choice of law in multistate property coverage cases is governed by which state contains the greatest "share" of property. Such a proposition presents numerous difficulties. Is the greatest share determined by the value of the property? The size of the property? Or the revenue-producing capabilities of the property? The Court declines to attempt to fi-

nesse such nuances, and will instead abide by well-established authority.

**36.** The plaintiff also strongly suggests that the fact that the defendants, in their denial of coverage, relied on the opinion of Morris Engineering, a Texas engineering firm, mandates application of Texas law as well. *Plaintiff's Response to Defendant's Position and Evidence on Mississippi Law Supporting Transfer of Venue* at 4. The Court declines to lend this fact the great weight the plaintiff seeks and does not find it favors application of Texas law.

It is therefore

**ORDERED** that the plaintiff's *Objections to the Affidavit of Marcea Hammock* (Docket No. 10) is hereby DENIED. It is further

**ORDERED** that the *Defendants' Motion for Leave to File Affidavit of Billy F. Cartwright in Support of Motion to Transfer Venue* (Docket No. 15) is hereby **GRANTED.** It is further

**ORDERED** that the District Clerk shall file the Affidavit prior to entry of the order on the motion to transfer. It is further

**ORDERED** that the defendants' *Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Brief* (Docket No. 6) is **GRANTED.** It is further

**ORDERED** that the plaintiff's case be transferred to the Southern District of Mississippi, Jackson Division.