SCOTTSDALE INSURANCE COMPANY and Market Finders Insurance corporation, Appellants,

v.

NATIONAL EMERGENCY SERVICES, INC.; NES Holdings, Inc.; NES Government Healthcare Services, Inc.; National Emergency Services West, Inc.; EMSCO Management Services, Inc.; NES Alabama, Inc.; NES Arizona, Inc.; NES Arkansas, Inc.; National Emergency Services California, Inc. d/b/a NES California, Inc.; National Emergency Services District of Columbia, Inc. d/b/a NES District of Columbia, Inc.; NES of Florida, Inc.; NES Georgia, Inc. National Emergency Services Idaho, Inc. d/b/a NES Idaho, Inc.; NES Illinois, Inc.; NES Indiana, Inc.; NES Iowa, Inc.; NES Kentucky, Inc.; NES Louisiana, Inc.; National Emergency Services Maine, Inc.; NES Michigan, Inc.; NES Minnesota, Inc.; NES Mississippi, Inc.; NES Missouri, Inc.; NES New Jersey, Inc.; NES New Mexico, Inc.; NES New York, Inc.; National Emergency Services North Carolina, Inc. d/b/a NES North Carolina, Inc.; NES Ohio, Inc.; NES Oregon, Inc.; NES Tennessee, Inc.; NES Virginia, Inc.; NES Washington, Inc.; National Emergency Services West Virginia, Inc. d/b/a NES West Virginia, Inc.; NES Wisconsin, Inc.; CP/National, Inc.; NES Governmental Services, Inc.; Garfield Emergency Medical Group, Inc.; Community Emergency Physicians, Inc.; Whitaker National Corporation; NES Medical Services, Inc.; Lakes/National Emergency Physicians, Inc.; Global Healthcare Services, Inc.; Physician One Medical Management, Inc.; National Medical Services of New York, P.C.; NES Medical Services of New York, P.C.; NES Medical Group of Texas, P.A.; NES Medical Services of Northern Connecticut, P.C.; NES Medical Services of Staten Island, P.C.; National Emergency Services of Kentucky, P.S.C.; and NES International, Inc., Appellees.

No. 01–02–00929–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 29, 2004.

Rehearing Overruled Sept. 10, 2004.

Alexander N. Beard, Bishop & Hummert, P.C., Dallas, TX, Erin L. Alexander, Richard R. Winter, Holland & Knight LLP, Chicago, IL, Andrew L. Kerr, Holland & Knight L.L.P., San Antonio, TX, for Appellants.

Joy M. Soloway, Osborne J. Dykes, III, Fulbright & Jaworski L.L.P., Matthew E. Coveler, Houston, TX, for Appellees.

Panel consists of Justices TAFT, NUCHIA, and KEYES.

## OPINION ON MOTION FOR REHEARING

EVELYN V. KEYES, Justice.

The court has considered Market Finders Insurance Corporation's (Market Finders) motion for rehearing in this case and is of the opinion that the motion should be denied. However, we withdraw our opinion and judgment dated March 11, 2004 and substitute those issued today.

Plaintiff/insured National Emergency Services, Incorporated, on behalf of itself and several affiliates (collectively NES), recovered a judgment against defendant/insurer Scottsdale Insurance Company (Scottsdale) and its general agent, Market Finders, based on jury findings that both defendants engaged in unfair or deceptive acts or practices in violation of article 21.21 of the Texas Insurance Code. The jury also found against Scottsdale for breach of contract and for breach of the duty of good faith and fair dealing. NES elected to recover on its statutory claim under the Insurance Code. On appeal, both Scottsdale and Market Finders challenge the trial court's application of Texas law to NES's claims and the trial court's exclusion of their exhibits 117, 120, and 121, which pertained to their pass-on damages defense that, because NES's insured physicians would be the ultimate bearers of the increased premium, either NES was not damaged or its recovery should be reduced. Scottsdale additionally complains that the trial court improperly excluded its exhibit 71, a page of notes written by a Healthcare Insurance Services (HIS) employee with an attached Virginia statute, which sets forth an opinion about the applicability of Virginia law. Finally, Scottsdale challenges the sufficiency of the evidence to support the jury's actual damages award. We affirm.

## Background

National Emergency Services, Inc. is a corporation existing under Illinois law with its principal place of business in California. National Emergency Services' affiliates and subsidiaries conduct business in most of the 50 states, including Texas and Virginia. Each affiliate and subsidiary has a different state of incorporation.

NES contracts with hospitals and clinics to provide physicians and other healthcare professional staff to emergency rooms and other healthcare facilities. The physicians and other healthcare professionals who are paid by NES are independent contractors, and NES provides them with medical liability insurance. No hospital allows a physician to treat a patient unless the physician carries sufficient malpractice insurance; therefore, NES provides each NES staffed doctor with a certificate evidencing that the physician carries insurance. Healthcare Insurance Services, Inc., a Houston, Texas insurance agency, is NES's broker/agent in obtaining the physicians' malpractice insurance.

In September 1999, HIS began working to secure malpractice insurance for NES after learning that NES's then-current insurer had decided to exit the malpractice insurance business. HIS transmitted an insurance package to Market Finders. Market Finders was a Louisville, Kentucky based insurance broker/agent for Scottsdale Insurance Company. Scottsdale was a surplus lines carrier incorporated in Ohio with its principal place of business in Scottsdale, Arizona. As the agent for Scottsdale, Market Finders wanted to write the coverage for HIS and NES. From its Houston, Texas office, HIS transmitted to Market Finders a Proposal of Insurance to cover NES and its contract healthcare professionals for the year 2000. On December 22, 1999, Market Finders initialed the Proposal, stamped it approved, and faxed it back to HIS in Houston. The Proposal contained the terms of the offer, including the policy period from December 31, 1999 to December 31, 2000, and the specified premium of $3,071,400. The Proposal listed the named insureds as "National Emergency Services, Inc. and NES Healthcare Services, Inc., aka NES Holdings, Inc., affiliates and subsidiary companies, 6477 College Park Square, Suite 316, Virginia Beach, VA 23461."

On December 22, 1999, HIS faxed the Proposal to NES's outside counsel, Sanford Pomerantz, in Missouri. Pomerantz proposed some changes to the Proposal, which HIS made and sent back. After receiving the revised HIS Proposal, Pomerantz sent it to Allan Rappaport, NES's President, in California. Rappaport signed the Proposal and returned it to Pomerantz, who in turn faxed it to HIS in Houston. On December 27, 1999, Market Finders initialed the Proposal in Kentucky, stamped it approved, and sent the final Proposal to HIS in Houston.

On the same day, Market Finders sent the underwriting package to Scottsdale in Arizona. In reviewing the risks, Scottsdale determined that it wanted a $3,300,000 premium, approximately $300,000 more than the agreement between Market Finders and NES/HIS. Unaware of the premium dispute, the next day, after receiving the two approvals based on the $3 million premium (one from Rappaport on behalf of NES and one from Watts on behalf of Market Finders), and thus documentation that the insurer had been bound, HIS began sending the "Certificates of Liability Insurance" to each of its locations where NES provided emergency room physicians.

On February 25, 2000, Market Finders, with Scottsdale's approval, issued a notice of cancellation of the insurance for nonpayment of premium. However, NES had already paid the premium in full to HIS by January 31, 2000; and HIS, in turn, had remitted it to Scottsdale. Scottsdale thus rescinded the cancellation on March 10, 2000. Four days later, Market Finders, again with Scottsdale's approval, issued a second cancellation notice, citing underwriting reasons and increased exposure as the basis. NES claimed that the second

cancellation lacked any reasonable basis, was in bad faith, and breached the contract for coverage through December 31, 2000.

NES had to quickly find replacement insurance coverage. When it did find replacement coverage, the coverage was approximately $600,000 more expensive than Scottsdale's. Rather than replacing the Scottsdale coverage with another insurance company's, NES had to enter into contracts with four different insurers.

NES filed suit against Market Finders and Scottsdale alleging (1) breach of the common law duty of good faith and fair dealing; (2) violations of the Texas Insurance Code, including unfair or deceptive acts or practices; (3) breach of contract; and (4) fraud. NES claimed that Scottsdale and Market Finders falsely promised to ensure NES for a full year at the premium price set forth in the Proposal, falsely cancelled the insurance guaranteed by the Proposal without a reasonable basis, misrepresented the reason for the first cancellation as being for nonpayment of the premium, and misrepresented that the second cancellation was because of increased risk. All the claims arose out of or in relation to the Proposal entered into by NES and Scottsdale through their agents HIS and Market Finders respectively.

A jury found in favor of NES and against Scottsdale by finding that Scottsdale breached its duty of good faith and fair dealing, the Insurance Code, and its contract with NES. The jury also found that Market Finders violated the Insurance Code by engaging in unfair or deceptive acts or practices. NES elected to recover against both defendants on its Insurance Code claim. With respect to NES's Insurance Code claim, the jury awarded and NES recovered $642,585 in

damages as the cost of replacement insurance. The judgment was rendered accordingly.

## Discussion

### *Choice of Law*

In their first issue, Scottsdale and Market Finders argue that the trial court erred in applying Texas, rather than Virginia, law to NES's claims.[1] Scottsdale argues that the parties chose to apply Virginia law, and that, even in the absence of a valid choice of law provision in the Proposal or policy, Virginia law should still apply based on section 188 of the Restatement (Second) of Conflict of Laws, which governs choice of law for contracts in the absence of an express agreement. Market Finders does not argue that a choice of law provision controls, but argues instead that section 148 of the Restatement (Second) of Conflicts of Laws, governing choice of law for torts in the absence of an express agreement, controls, and that, under section 148, Virginia has the most significant relationship with NES's unfair or deceptive acts or practices claim, thereby warranting the application of Virginia law. NES contends that article 21.42 of the Texas Insurance Code requires that Texas law apply and that, if article 21.42 does not apply, sections 145 and 188 of the Restatement (Second) of Conflict of Laws, governing choice of law for contract and tort actions, mandate that Texas law apply. Market Finders argues that article 21.42 of the Texas Insurance Code does not apply.

 Which state's law governs an issue is a question of law for the Court to decide. *Torrington Co. v. Stutzman,* 46

---

1. In the instant case, the parties confined their choice-of-law dispute to a choice between Texas and Virginia law.

S.W.3d 829, 848 (Tex.2000). Therefore, we must review the trial court's decision to apply Texas law in this case de novo. *See Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex.1996). Absent a choice of law provision, determining the state contacts to be considered by the court in making this legal determination involves a factual inquiry. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex.2000).

 Except when a contract with a valid choice of law clause applies, Texas courts apply the substantive law of the state with the most significant relationship to the particular dispute at issue. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145, 188 (1971). Thus, unless the court finds that a valid choice of law clause governs all claims, it must evaluate each of the significant relationship factors in light of the substantive issues presented in the case. *Duncan*, 665 S.W.2d at 421. The substantive issues determine which factors we must consider in determining which State has the most significant relationship. *Id.* Texas law may apply to some claims, but not other claims. *See, e.g., SnyderGen. Corp. v. Great Am. Ins. Co.*, 928 F.Supp. 674, 678 (N.D.Tex. 1996). In a choice of law analysis, the number of contacts with a state is not determinative. *Duncan*, 665 S.W.2d at 421. Rather, we must evaluate the contacts in light of the state policies underlying the particular substantive issue. *Id.*

*Choice of Law Clause*

 Scottsdale contends that the Proposal and the policy issued pursuant to it both contain provisions which manifest the intent of the parties that Virginia law apply to disputes such as this one. Scottsdale first addresses the Proposal, claiming that the designation of the first Named Insured, the NES office in Virginia Beach, as "the sole agent for all insureds as respects policy terms and claims settlement" evinces the intent of the parties that Virginia law apply. Although Scottsdale twice misidentifies the Virginia Beach, Virginia office of NES as "*the* 'Named Insured,'" it is merely the *first* Named Insured. The Named Insureds include "National Emergency Services, Inc. and NES Healthcare Services, Inc., aka NES Holdings, Inc., affiliates and subsidiary companies."

To hold that a Virginia choice of law provision governs this dispute, we must find either an express or an implied choice of law provision in the Proposal. Since there is no express choice of law clause in the Proposal, we must determine whether the Proposal lends itself to the conclusion that the law of a particular state applies, as required to imply a choice of law provision. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. (a). There are no provisions in the Proposal which indicate that the parties wished to have the law of a particular state apply; nor does the Proposal contain legal expressions or make reference to legal doctrines that are peculiar to the local law of a particular state. *See id.* There is only the Proposal's designation of one of the Named Insureds as agent for the others with respect to policy terms and claims settlement. We find that this is far too slender a reed to support Scottsdale's claim that NES and Scottsdale intended that Virginia law apply. We hold, therefore, that the Proposal does not manifest the intent of the parties that Virginia law apply. Nor can the policy evince the intent of the parties that Virginia law apply; since the terms of the policy were never accepted by NES, the policy's terms cannot be indicative of NES's intent.

Market Finders does not even intimate that Virginia law should apply based on a

choice of law provision, but rather focuses on the significant relationship test, which is used if there is no choice of law provision that provides otherwise. NES, however, argues that article 21.42 of the Texas Insurance Code requires that Texas law apply, or alternatively, the most significant relationship test governs.

*Statutory Directive*

We begin our analysis with section 6 of the Restatement (Second) Conflict of Laws, which provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6. We must, therefore, determine whether a statutory directive of Texas, the forum state, on choice of law applies. *Id.*

■ NES argues that the Texas Legislature has mandated that Texas law apply because article 21.42 of the Insurance Code provides a choice of law rule. Article 21.42 states,

> Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

TEX. INS.CODE ANN. art. 21.42 (Vernon 2003). For article 21.42 to apply, therefore, the contract of insurance must satisfy three requirements: (1) the insurance proceeds must be payable to a citizen or inhabitant of Texas; (2) the policy issued pursuant to the contract must be issued by a company doing business in Texas; and (3) the policy must be issued in the course of the insurance company's Texas business. *Hefner v. Republic Indem. Co. of Am.*, 773 F.Supp. 11, 13 (S.D.Tex.1991). Article 21.42 has been interpreted narrowly to avoid giving "extraterritorial effect" to its terms. *See Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex.1968); *Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354, 1359 (5th Cir.1973).

■ Here, NES, the entity to whom the insurance proceeds were payable, is registered under the laws of Illinois and has its principal place of business in California. Therefore, under the plain language of article 21.42, the first requirement for the applicability of Texas law—that the entity to whom the insurance proceeds are payable be a Texas citizen—is not satisfied. It is not enough for the application of article 21.42 that one of NES's affiliates and certain of NES's insured physicians are Texas residents so that insurance proceeds would be payable in some instances to a citizen or inhabitant of Texas. In this regard, we find the facts to be similar to those in *TV–3, Inc. v. Royal Insurance Company of America*, 28 F.Supp.2d 407, 417 (1998). In that case, the plaintiff, TV–3, was a Mississippi corporation that operated two television stations in Texas; the defendant issuer Royal, although an Illinois corporation, conducted business in all 50 states, including Texas; and the defendant issuer Globe was a Delaware corporation regularly conducting business in Texas. *Id.* at 409–10. The plaintiff, TV–3, argued that article 21.42 operated as a statutory directive that Texas law apply. *Id.* at 415. The court held that the plaintiff's operation of television stations in Texas did not fulfill the requirements of article 21.42. *Id.* at 417. It observed, "This, in fact, is exactly the sort of 'extraterritorial effect' proscribed by

*Austin Building Company." Id.* at 417 (citing *Austin Bldg. Co.,* 432 S.W.2d at 701 (rejecting the application of Texas law to an insurance coverage dispute involving a fire insurance policy written in Kansas on Kansas property, even though Texas resident was one of insureds)); *see also Hefner,* 773 F.Supp. at 13 (article 21.42 did not require application of Texas law to suit by third party beneficiary of insurance contract made and signed in California and payable to California resident when third party beneficiary was injured in Texas).

Because the statutory requirements cannot be established, we hold that article 21.42 is inapplicable. We turn, therefore, to the most significant relationship test.

*Most Significant Relationship Test*

We determine the most significant relationship by reference to the substantive issues in the case. The substantive issues at trial were whether Scottsdale and Market Finders committed a deceptive act or practice in misrepresenting the terms and benefits of the insurance contract (the Proposal), and whether Scottsdale's cancellation of the policy issued pursuant to the Proposal, thereby cancelling the insurance contract memorialized in the Proposal, violated its duty of good faith and fair dealing and constituted a breach of contract.

*Restatement, Sections 188, 145, & 148*

Scottsdale argues that Virginia law applies on the basis of the factors listed in section 188 of the Restatement, which pertains to contract actions. Market Finders argues that, because NES's unfair or deceptive acts or practices claim is based on alleged misrepresentations, this Court should use the factors listed in section 148 of the Restatement for the particular torts of fraud and misrepresentation. In its brief, NES notes that the claims here sound in both contract and tort; it argues, therefore, that the court should consider the factors both in section 188 (contract) and in section 145 (general torts) of the Restatement. We consider each argument.

*Contract Claims* [2]

As to the contract claim at issue in the present case, the relevant factors under section 188 include (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188. Scottsdale contends that, under section 188, Virginia law applies; and NES contends that Texas law applies.

Here, the place of contracting was in Texas and the place of negotiation of the contract was in Texas, Missouri, California, and Kentucky. The Proposal was created by HIS in Texas and sent from Texas to Market Finders in Kentucky; after signatures were obtained from both Dr. Rappa-

---

**2.** At the trial level, NES urged both contract and tort claims and a jury found for NES under both theories. Although NES elected to recover solely under the Texas Insurance Code, we address the factors relevant to the contract claims for several reasons. First, unless a choice of law clause governs all claims, we must evaluate each of the significant relationship factors in light of the substantive issues presented in the case. *Duncan,* 665 S.W.2d at 421. Here, the substantive issues involved are deceptive acts or practices in misrepresenting the terms and benefits of the Proposal, violations of the duty of good faith and fair dealing, and breach of contract. Furthermore, Scottsdale argues that Virginia law applies based on these contract factors, implying that these are the controlling factors. Similarly, many of the deceptive acts and unfair practices NES alleged were committed by Scottsdale and Market Finders, although torts, relate back to the contract.

port, NES's president, in California and Market Finders in Kentucky, the Proposal was sent back to HIS in Texas. The premiums were paid by NES to HIS in Texas and from HIS in Texas to Market Finders and Scottsdale. The charge noted that HIS was the agent of Scottsdale for purposes of collecting the premiums for NES's insurance coverage, and HIS was the agent of NES for all other purposes. HIS was thus the central nexus for all of the parties' communications and actions in forming and negotiating the contract. The parties performed in Kentucky (Market Finders), Texas (where NES paid the premiums), and all the states where physicians were located, including both Virginia and Texas (where Scottsdale provided insurance). Neither Scottsdale, Market Finders, nor NES was incorporated or had its principal place of business in Virginia or Texas; and the insurance policy covered locations both in Virginia and Texas.

In contrast to the numerous Texas contacts, there are only a few factors relevant to Virginia regarding the contract. Although the NES office located in Virginia Beach, Virginia is listed as the first Named Insured on the Proposal, the Named Insureds, including NES's affiliates and subsidiary companies, were located in numerous states. NES also paid its surplus lines tax to Virginia. However, the location of the payment of NES's surplus lines tax is irrelevant to the issues in this case. Moreover, testimony from Rappaport and Galtney, the president of HIS, revealed that Virginia was selected for the surplus tax lines only because NES has one major office there and Virginia has a low percentage rate for the surplus lines tax. Rappaport also testified that NES contracted with four Texas facilities and 10 to 12 Virginia facilities. However, it is not the number of contacts with a particular state that is determinative, but the qualitative nature of the particular contacts insofar as they implicate important state policies underlying the particular substantive issue. *Duncan*, 665 S.W.2d at 421.

Applying these Restatement factors to the present case, therefore, we find that the application of Texas law to the contract issues in this case was proper.

*Tort Claims*

■ As to the tort claims present in this case, Market Finders argues we should follow section 148 of the Restatement, which applies to the particular torts of fraud and misrepresentation. NES, on the other hand, briefs this issue according to section 145 of the Restatement, which lists the factors used in determining which state has the most significant relationship as to general tort claims.

In dealing with claims of violations of article 21.21 of the Insurance Code (unfair or deceptive acts or practices), other courts have applied the factors found in the general tort provision of the Restatement (section 145) rather than the Restatement's tort section applicable to the particular tort of fraud and misrepresentation (section 148). *See Nat'l W. Life Ins. Co. v. Rowe*, 86 S.W.3d 285, 300 (Tex.App.-Austin 2002, pet. filed); *TV–3*, 28 F.Supp.2d at 417. Our analysis reveals that the Restatement factors set out in section 145 for general torts are very similar to those listed in section 148 for fraud and misrepresentations and that either tort section requires the application of Texas law.

The relevant factors under section 145 include (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is

centered. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.

Applying the factors listed in section 145 of the Restatement, the general tort section, the application of Texas law was proper. The places where Market Finders and Scottsdale made the misrepresentations and engaged in deceptive conduct are Arizona and Kentucky. HIS received the Proposal in Texas and, relying on the representations in it as true, passed the Proposal on to NES's president, Rappaport, in California to be signed and relied on by NES. Upon receiving approvals from NES and Market Finders ensuring that Scottsdale was bound by the Proposal, HIS, in Texas, sent certificates of insurance to each of the locations where NES provided emergency room physicians. NES received the first cancellation notice and demand for higher premiums through the NES office in Virginia, which passed it on to Rappaport in California, who then passed it on to HIS in Texas. HIS, in Texas, contacted Market Finders, in Kentucky, to discuss why the cancellation notice had been issued. Market Finders told HIS that Scottsdale was demanding an additional $300,000 premium payment. HIS told Market Finders that NES was unwilling to pay the additional money demanded. NES also received the second cancellation notice through the NES office in Virginia and gave the notice to HIS in Texas to handle. The injury resulting from the unfair and deceptive acts of Scottsdale, in Arizona, and Market Finders, in Kentucky, not only impacted NES at its principal place of business in California, it also impacted residents or inhabitants of every state in which NES affiliates or subsidiaries and their insured physicians were located.

In sum, although the locations of the conduct causing the injuries were Kentucky and Arizona, from which the Proposal, cancellation notices, and demand for a higher premium were sent by Market Finders and Scottsdale, the locations of the injuries were nationwide, where NES and its affiliates and insured physicians were located. Therefore, no particular state's law is strongly favored by the first two factors. Nor does the place of incorporation or place of business of the parties mandate the application of any particular state's law. However, the last factor—the place where the relationship between and among the parties was centered—leans strongly towards the application of Texas law. Since the deceptive conduct at issue was not limited to the wrongful cancellations, but also included tortious conduct made in the course of contract formation and the wrongful demand for additional premiums, much of which conduct centered on Texas, not Virginia, we find that, as between Texas and Virginia, section 145 of the Restatement requires the application of Texas law to NES's tort claim.

The factors under section 148 of the Restatement, the fraud and misrepresentation section, include (a) the place where the plaintiff acted in reliance upon the defendant's representations; (b) the place where the plaintiff received the representations; (c) the place where the defendant made the representations; (d) the domicile, residence, nationality, place of incorporation and place of business of the parties; (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time; and (f) the place where the plaintiff is to render performance under a contract which he has been inducted to enter by the false representations of the defendant. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148.

The same considerations that govern our decision that Texas law applies under section 145 favor the application of Texas law

under section 148. The only significant difference between our determining which state's law applies under section 145 and making that determination under section 148 is that section 145 requires us to take into account the location of the injury, where injury is a material element of NES's deceptive trade practices claim, whereas section 148, instead, requires us to take into account the place where NES was to render performance, *i.e.*, pay the premium, which is less relevant to NES's tort claims. Nevertheless, since the premium was to be paid to HIS in Texas for transmission to Scottsdale's home office in Arizona, section 148 likewise favors the application of Texas, not Virginia, law. Finally, the general factors listed in section 6 of the Restatement support the application of Texas law.

*Restatement, Section 6—General Factors*

Section 6(2) of the Restatement also provides a list of general factors relevant to the choice of the applicable rule of law when, as here, no statutory directive determines the choice of law:

When there is no [statutory] directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6. Comment (e) of section 6 of the Restatement pronounces that, "if the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. (e).

This action was filed in Texas, and the relationship among the parties was centered in Texas. The express purpose of the Texas "Unfair Competition and Unfair Practices" Act is "to regulate trade practices in the business of insurance by defining, or providing for the determination of all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." TEX. INS.CODE ANN. art. 21.21 § 1(a). The regulation of deceptive acts of practices in insurance, in part through private causes of action such as the instant action, is thus an integral part of Texas's regulation of the insurance business. By contrast, unlike Texas, Virginia lacks a private cause of action for unfair or deceptive acts or practices in insurance.[3]

Were we to agree that insurers can evade the application of Texas law merely by selecting as first named insured among many insureds, including Texas residents, an insured incorporated in a state that lacks the protections afforded by the Texas Insurance Code, we would be thwarting

---

**3.** Virginia does have an Unfair Insurance Practices Act which prohibits insurance agents from making false representations about the benefits, advantages, or terms of any insurance policy; violation of the Virginia statute subjects insurers to penalty fines, cease and desist orders, and license suspension or revocation, but not to private causes of action.

the express policy of the Texas Legislature that its citizens be protected from unfair or deceptive acts and practices. By contrast, Virginia's interest in protecting its citizens from misrepresentations about an insurance policy is no greater than that of any other state whose citizens were among the Named Insureds; and that interest is adequately protected by trying this case in Texas.

Therefore, in viewing the relevant facts in their entirety, and in light of their impact on the policy factors set out in section 6 of the Restatement, we find that the application of Texas law to all claims is appropriate. We conclude that the trial court correctly applied Texas law to NES's claims. Scottsdale's and Market Finders's first issue is overruled.

### Excluding Exhibits

*Standard of Review*

 We apply an abuse of discretion standard to the question of whether a trial court erred in an evidentiary ruling. *Owens-Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998). The admission or exclusion of evidence is a matter within the trial court's discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *Owens-Corning,* 972 S.W.2d at 43. We must uphold the trial court's ruling if there is any legitimate basis for its ruling. *Id.* Even if the evidentiary ruling is erroneous, we will not reverse it unless the error probably caused the rendition of an improper judgment. *Id.*

*Exclusion of Exhibit 71*

 In its issue 2(a), Scottsdale contends the trial court erred in refusing to admit into evidence its exhibit 71, "an admission by NES's General Counsel that

the policy was properly cancelled under Virginia law." Scottsdale sought to introduce this evidence to demonstrate that, prior to filing its lawsuit, NES believed Virginia law would be applicable. The evidence consisted of a summary of a discussion between Crys Blankenship, an HIS employee, and Sandy Pomerantz, an NES attorney, in which Scottsdale claims, "Pomerantz admitted that under Virginia law, the cancellation was proper." Attached to the summary notes are four pages of a Virginia statute. Scottsdale argues that this exhibit establishes that NES believed Virginia law applied to the dispute with NES.

During the pre-trial motions hearing, the court reviewed the parties' motions in limine, exhibits, and deposition excerpts. When defendants' exhibit 71 was reached, NES objected on relevancy and hearsay grounds, and claimed that the copy of the statute should not go to the jury as a matter of law. The court sustained NES's objection and refused to admit the exhibit. On the third day of trial, outside the presence of the jury, the court revisited the issue of admitting or excluding defendants' exhibit 71. NES objected on three grounds: (1) the document was hearsay; (2) it expressed an opinion on Virginia law from a non-expert on the subject; and (3) the probative value of any admission was substantially outweighed by the unfair prejudice that would be caused by giving the jury an exhibit pertaining to Virginia law. The court noted:

> I'll hear what [Crys Blankenship] says. But if her testimony is that Sandy Pomerantz advised her that Scottsdale was within legal boundaries, because under Virginia law there's no bad faith, then, I'm going to sustain an objection on the grounds including—I mean, I already made a determination that Texas law is going to apply to bad faith. So, I think

that would be confusing and misleading to the jury. . . .

. . .

I'll sustain the objection to everything behind Page 1 of Exhibit 71. Then, I'll hear the objections after we do the voir dire.

After hearing testimony from Crys Blankenship, NES reurged its objections to the admission of exhibit 71. The court again sustained NES's objection. On appeal, Scottsdale claims that the trial court's exclusion of this exhibit was error because the evidence (1) was an admission by a party-opponent; (2) was a business record and, therefore, an exception to the hearsay rule; and (3) should have been admitted, not for the truth of the matter, but to establish that plaintiffs believed that Virginia law applied.

The trial court noted, when sustaining NES's objection to the evidence, that the admission of the evidence would be confusing and misleading for the jury, particularly because the court had already concluded that Texas law applied and the exhibit introduced evidence concerning Virginia law and its applicability. As previously noted, the admission or exclusion of evidence is a matter within the trial court's discretion; we will, therefore, not disturb a trial court's evidentiary ruling if there is a legitimate basis for it. *See City of Brownsville*, 897 S.W.2d at 753; *Owens-Corning*, 972 S.W.2d at 43. We conclude that there was a legitimate basis for the trial court's exclusion of the evidence— that which the trial court expressly noted, that the probative value of the evidence was substantially outweighed by the danger of confusion of the issues, or misleading the jury. *See* Tex.R. Evid. 403.[4]

Which law governs is not a matter of the parties' beliefs, but a question of law for the court. *See Torrington Co.*, 46 S.W.3d at 848. Here, the court had already made a correct legal determination that Texas law would apply to the case. Introducing Virginia law into the case, for whatever reason, would have been likely to lead the jury away from the factual issues in the case, *i.e.*, those within its province, and would have introduced evidence to which the jury might have improperly attached weight in making its liability determinations. We hold that the trial court did not abuse its discretion in excluding defendants' exhibit 71. We overrule Scottsdale's issue 2(a).

*Exclusion of Pass–On Defense Exhibits*

■ Scottsdale's issue 2(b) and Market Finder's issue two both claim that the trial court erred in improperly excluding exhibits 117, 120, and 121, which relate to defendants' "pass-on" damages defense. The defendants' pass-on damages defense claimed that NES's contracted physicians bore the entire cost of their professional liability insurance and, therefore, NES did not suffer any damages.

Prior to trial, NES filed a motion to exclude the testimony of defendants' proposed expert, David A. Hile, on the topic of the pass on of damages. The trial court granted the motion to exclude with respect to the pass-on theory and noted that it would be treated as a motion in limine rather than as a motion to exclude. During trial, Scottsdale and Market Finders made an offer of proof on the pass-on damages defense. They had intended to offer Exhibits 117, 120, and 121 for such purposes. Exhibit 117 is a letter from a hospital requesting documentation from NES regarding its increased malpractice

---

**4.** Scottsdale fails to address the trial court's basis for excluding the evidence—Rule 403 of the Texas Rules of Evidence. Rather; Scottsdale argues that there are other reasons why the exhibit should have been admitted.

insurance. Exhibits 120 and 121 are financial statements of NES which note that NES's physicians pay for any increased premiums and that the entire cost of the professional liability policy is the responsibility of the physicians. Also included in the offer of proof were several expert deposition transcripts pertaining to the pass-on theory. NES objected to the testimony and exhibits pertaining to the pass-on defense:

> The problem with the pass-on defense is that the only parties to the proposal of insurance are National Emergency Services and its affiliated entities and the defendants Scottsdale, Market Finders. The idea that [NES] could pass on damages to a third party is irrelevant.
>
> . . .
>
> Finally, the idea that we could pass on charges is unduly burdensome—excuse me, unfairly prejudicial. What we're looking at here are damages to the plaintiffs and not looking to try and figure out what gets passed on to parties that aren't a piece of this litigation.

The trial court sustained NES's objection, and Scottsdale and Market Finders made an offer of proof relating to the evidence they believed would tend to show that the damages, if any, suffered by NES were passed on to the physicians.

 Scottsdale and Market Finders argue that, since NES can pass on the cost of replacement coverage to the physicians, NES suffered no damage. However, in *Trammel's Lubbock Bail Bonds v. Lubbock County*, 60 S.W.3d 145 (Tex.App.-Amarillo 2001), *aff'd in part and rev'd in part on other grounds*, 80 S.W.3d 580 (Tex. 2002), the Amarillo Court of Appeals rejected this argument and the pass-on de-

fense for reasons equally applicable to the present case. Trammel's brought suit against the County to recoup "bond service charge" fees collected by the County. The County argued that because Trammel's had passed this fee on to its bail bond clients, ultimately Trammel's suffered no damages. In rejecting this argument, the court stated:

> This is little more than asserting that one compensated for a wrong from a source unrelated to the supposed tortfeasor should not be able to recover anything from the tortfeasor. When viewed in those terms, the contention violates the collateral source rule. The latter precludes a tortfeasor from reaping the benefit of a payment conferred upon the injured party from sources other than the tortfeasor. *Jones v. Red Arrow Heavy Hauling, Inc.*, 816 S.W.2d 134, 136 (Tex.App.-Beaumont 1991, writ denied).

*Id.* at 153.[5] Likewise, the Texas Supreme Court refused to implement the pass-on defense when it had the opportunity to do so. *Abbott Laboratories Inc. v. Segura*, 907 S.W.2d 503 (Tex.1995) (refusing to recognize the pass-on defense, *inter alia*, because of the "morass which would ensue in determining who among all the potential plaintiffs actually absorbed part of the cost passed on, and, therefore, is entitled to reimbursement"). We likewise decline to reject the collateral source rule and to recognize the pass-on defense here.

Here, only NES is responsible for recovering the increased costs associated with the replacement coverage from the physicians. Neither Scottsdale nor Market Finders was in privity with the source of

---

5. The collateral source bar arises and prevents a party from asserting a pass-on defense when (1) the payment was procured independently of the tortfeasor and (2) the tortfeasor

lacks privity with regard to the payment. *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex.1980).

the potential payment. It was the decision of NES whether or not to seek the increased amount of coverage from the physicians. Thus, while it may be true that NES can pass on such increased costs, there is nothing in the record, including the offer of proof, to indicate that NES did or will do so; and, even if it did pass on its costs, the payment would be procured from a source independent of Scottsdale and Market Finders. We will not hold, in the context of this case, that a tortfeasor can avoid paying for his torts because the victim may independently recover his loss elsewhere through his own efforts.

■ Finally, admission of the evidence proffered in support of appellants' pass-on damages defense would be unfairly prejudicial. Tex.R. Evid. 403. Knowledge that NES may ultimately increase the physicians' cost of insurance to cover its own increased costs of insurance "would have undoubtedly drawn the jury's attention from its task of making [the liability determination] and allocating appropriate damages." *Lee-Wright, Inc. v. Hall*, 840 S.W.2d 572, 582 (Tex.App.-Houston [1st Dist.] 1992, no pet.). Therefore, evidence that NES's physicians might bear the cost of the insurance premiums was properly excluded by the trial court. We overrule Scottsdale's issue 2(b), and Market Finders' issue two.

### Insufficient Evidence to Support Damages

■ In its third issue, Scottsdale claims there was insufficient evidence to support the jury's findings regarding NES's damages. We construe Scottsdale's argument to be a challenge to the legal sufficiency of the evidence supporting the damage award.[6]

In conducting a legal sufficiency review, we consider all the evidence in the light most favorable to the prevailing party. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex.2001). We indulge every reasonable inference in that party's favor and disregard all evidence and inferences to the contrary. *Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998). When, as here, the complaining party challenges the legal sufficiency of the evidence underlying an adverse finding on which he did not have the burden of proof, the party must demonstrate on appeal that there is no evidence to support the finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). If more than a scintilla of evidence supports the finding, the no-evidence challenge fails and the finding is legally sufficient. *Lee Lewis Constr.*, 70 S.W.3d at 782; *Formosa Plastics Corp. USA. v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence. *Lee Lewis Constr.*, 70 S.W.3d at 782. In resolving legal sufficiency of the evidence to support damages, a jury's finding will be upheld if it is within the range of the testimony regarding the amount of damages incurred. *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 321 (Tex.App.-San Antonio 2002, pet. denied); *Duggan v. Marshall*, 7 S.W.3d 888, 893 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

■ Here, Scottsdale argues that there was insufficient evidence to support NES's claim that the insurance purchased to re-

---

**6.** In its brief, Scottsdale notes that "at trial, NES *wholly failed* to establish its damages claims with the requisite certainty and failed to prove that the replacement coverage was comparable to the Scottsdale coverage. Accordingly, the jury's finding regarding NES's damages was error." (Emphasis added).

place the cancelled Scottsdale policy was substantially similar to the cancelled coverage. However, the charge submitted to the jury did not require that the insurance purchased to replace the cancelled Scottsdale policy be substantially similar. Without any objection from Scottsdale or Market Finders, the charge instructed the jury to award damages, if any, for the following: "(a) the reasonable and necessary increase in insurance premium cost, if any, for NES to purchase replacement insurance coverage for the period June 17, 2000, to December 31, 2000." We review the sufficiency of the evidence based on the charge as submitted, not as it should have been, in the absence of objection or requested instruction. *Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000); *City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 71 (Tex. 2000).

During trial, NES presented testimony from William Galtney, an HIS representative, about the increased cost of replacement coverage. Galtney testified that the replacement coverage was approximately $642,585 more than the original insurance. The jury awarded NES $642, 585 as the reasonable and necessary increase in insurance costs for NES to purchase replacement insurance coverage. Because the jury's award was within the range of the testimony regarding the amount of damages incurred, we uphold the jury's finding. *See State Farm Fire,* 88 S.W.3d at 321. We hold that the evidence was legally sufficient to support NES's damage claim for purchasing replacement insurance coverage. We overrule Scottsdale's third issue.

## Conclusion

We affirm the judgment.