Opinion issued July 19, 2007






 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00447-CV






BEST WESTERN GREENWAY PLAZA INN & SUITES AND CORSICANA
HOSPITALITY CORPORATION D/B/A/ BEST WESTERN GREENWAY
INN, Appellants


V.


MICHAEL PRUITT, Appellee






On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2004-63899







MEMORANDUM OPINION

 This is an appeal from a bench trial in which the court awarded $6,600 in
damages plus $745.80 in interest to appellee, Michael Pruitt, in his premises liability
suit against appellants, Best Western Greenway Plaza Inn & Suites and Corsicana
Hospitality Corporation d/b/a/ Best Western Greenway Inn (collectively, "Best
Western"). In three points of error, Best Western argues that (1) the trial court erred
when it (a) found Best Western liable for Pruitt's injuries based on its answer to an
interrogatory and (b) concluded that Best Western concealed witnesses from Pruitt
and (2) the record fails to support the trial court's award of $6,600 in damages.

 We affirm.

Facts and Procedural History

 At the time of the accident, Michael Pruitt worked for Southgate, a
telemarketing company that leased office space from Best Western. Around
10:30 a.m. on December 30, 2003, Pruitt left his work space to go to the bathroom. 
As he rounded the corner, he slipped on a puddle of water and fell onto the floor. 
According to Pruitt, the water was coming out of the men's bathroom, it had
accumulated in front of the men's bathroom door, and no signs had been posted to
warn about the presence of the water.

 Shortly after his fall, Pruitt found Vishu Bhambani, the owner or part owner of
the hotel, to tell him what had happened. At trial, Bhambani testified that when he
saw Pruitt after the fall, Pruitt's clothes were not wet. After speaking with Pruitt,
Bhambani walked to the part of the hallway where Pruitt said he had fallen and saw
no water. Bhambani also testified that he never saw any water on the floor, even
though his living space was only 10 to 12 feet away from the men's bathroom and he
walked down that hallway every 30 minutes. Later in his testimony, however,
Bhambani stated that he did not know whether the floor had ever been wet, but then
testified that someone had told him that the handle of a urinal in the men's bathroom
"had gotten stuck and the water ha[d] come down," but that it was cleaned by
Rodrigo, the chief maintenance man for the hotel.

 Within 10 minutes of his fall, Pruitt drove himself to Park Plaza Hospital,
where he complained of pain on his right side and a swollen foot. The doctor
prescribed some pain medication and instructed Pruitt to follow up with his personal
physician. Two billing records from the hospital admitted into evidence show that
Pruitt incurred $789 and $269 in medical expenses for this visit. 

 Pruitt subsequently received medical care, which included physical therapy and
massages, from Downtown Performance Rehabilitation. A statement from
Downtown Performance Rehabilitation admitted into evidence shows that Pruitt
incurred $2,528 in medical expenses over the course of approximately three weeks. 
The record also includes a statement from Southwest Radiology Association for $39
and a prescription label showing Pruitt's co-pay for hydrocodone as $17.59.

 On November 10, 2004, Pruitt filed suit for premises liability against Best
Western, alleging that he suffered "serious and permanent bodily injuries" when he
slipped and fell in the puddle of water. During the course of discovery, Pruitt served
on Best Western, and Best Western answered, several interrogatories. Interrogatory
number four asked Best Western to "identify the source of the water that was on the
floor at the time of Plaintiff's fall." Best Western responded that it disputed Pruitt's
claims but then stated that the source was the "[w]ater supply line in [the] men's
bathroom." Interrogatory number six read, in part, "Please identify the employees of
Defendant that were placed on notice of the water being on the floor prior to the fall
of Plaintiff." Best Western responded that it disputed Pruitt's claims but then listed
the names of two employees, Bhambani and Sanjeev Sihavay. At trial, however,
Bhambani testified that he had no knowledge about the presence of the water and that
his answer to interrogatory number six should have been that no one was placed on
notice of the water on the floor prior to Pruitt's fall. 

 On January 10, 2006, the trial court conducted a bench trial of Pruitt's claims
against Best Western. After hearing the evidence, the trial court found Best Western
liable for Pruitt's injuries and then stated,




 I've been pondering about the problem which defendant has alluded to
or defendant's counsel in deciding whether there had been water on the
floor for a sufficient period of time to have expected the defendant to
have found it and cleaned it up or posted a warning or done something
about it, and I have concluded that Interrogatory No. 6 does support the
plaintiff's position, and I've also concluded that the amount of water on
the floor and the fact that it was coming clear out of the bathroom is
some evidence that it must have been running for awhile to get that
much water on the floor.


 I also considered the fact that the defendant has concealed
witnesses just as the plaintiff says they have . . . .


The trial court concluded by finding that Pruitt's damages were $6,600 plus
prejudgment interest. On February 24, 2006, the trial court signed a judgment for
$6,600 in damages and $745.80 in prejudgment interest.

Premises Liability In its first point of error, Best Western contends that the trial court erroneously
found Best Western liable on the basis of its answer to interrogatory number six
because it does not establish the length of time that the water was present on the floor. 
In other words, Best Western argues that a necessary piece of evidence is missing. 
Therefore, we construe this argument to be a challenge to the legal sufficiency of the
evidence regarding whether Best Western had actual or constructive knowledge of
the water's presence.

 For a plaintiff who is an invitee (1) to prove a premises liability claim, the
plaintiff must show that (1) the owner or operator of the premises had actual or
constructive knowledge of some condition on the premises; (2) the condition posed
an unreasonable risk of harm; (3) the owner or operator did not exercise reasonable
care to reduce or eliminate the risk; and (4) the owner's or operator's failure to use
such care proximately caused the plaintiff's injuries. Keetch v. Kroger Co., 845
S.W.2d 262, 264 (Tex. 1992); Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296
(Tex. 1983). A plaintiff in a slip and fall case satisfies the first element by
establishing that (1) the defendant placed the substance on the floor; (2) the defendant
actually knew that the substance was on the floor; or (3) it is more likely than not that
the dangerous condition existed long enough to give the premises owner a reasonable
opportunity to discover it. Bendigo v. City of Houston, 178 S.W.3d 112, 114 (Tex.
App.--Houston [1st Dist.] 2005, no pet.) (citing Wal-Mart Stores, Inc. v. Reece, 81
S.W.3d 812, 814 (Tex. 2002)). 

 Legal Sufficiency

 In conducting a legal sufficiency review, we consider all the evidence in the
light most favorable to the prevailing party. Scottsdale Ins. Co. v. Nat'l Emergency
Servs., Inc., 175 S.W.3d 284, 300 (Tex. App.--Houston [1st Dist.] 2004, pet. denied). 
We indulge every reasonable inference in that party's favor and disregard all evidence
and inferences to the contrary. Id. When, as here, the complaining party challenges
the legal sufficiency of the evidence underlying an adverse finding on which he did
not have the burden of proof, he must demonstrate that there is no evidence to support
the finding. Id. If more than a scintilla of evidence supports the finding, the no-evidence challenge fails and the evidence to support the finding is legally sufficient. 
Id. (citing Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001)).

 In interrogatory number six, which was admitted into evidence, Pruitt asked
Best Western to "identify the employees of [Best Western] that were placed on notice
of the water being on the floor prior to the fall of [Pruitt]." Best Western answered
that it disputed Pruitt's claims, but then listed the names of two Best Western
employees, including Bhambani. Viewing this answer in the light most favorable to
Pruitt, we conclude that Best Western's no-evidence argument fails and the evidence
to support the finding that it had actual notice of the water on the floor is legally
sufficient. See Scottsdale, 175 S.W.3d at 300. 

 We overrule Best Western's first point of error.



Concealment of Witnesses

 In its second point of error, Best Western challenges the trial court's finding
that it concealed witnesses from Pruitt. 

 In challenging the trial court's finding that it concealed witnesses from Pruitt, 
 Best Western fails to provide any legal analysis or authority and fails to explain how,
if at all, the trial court's finding that Best Western concealed witnesses affects the
outcome of his appeal. See Tex. R. App. P. 38.1(h) ("The brief must contain a clear
and concise argument for the contentions made, with appropriate citations to
authorities and to the record."). We conclude, therefore, that this point of error is
inadequately briefed. See id.

 We overrule Best Western's second point of error.

Damages

 In its third point of error, Best Western argues that the record fails to account
for $6,600 in damages. Best Western contends that Pruitt's testimony about his lost
wages was "ambiguous" and "inconclusive" and that Pruitt's only testimony
regarding his physical pain and discomfort was that "he has suffered as a result of the
fall and the medical care."

 Regarding Pruitt's medical expenses, the record includes two billing records
from Park Plaza Hospital, one for $789 and another for $269; a statement from
Downtown Performance Rehabilitation for $2,528.80; a statement from Southwest
Radiology Association for $39; and a prescription label showing Pruitt's co-pay for
hydrocodone as $17.59. Together, these total $3,643.39. As for his lost wages, Pruitt
testified that he missed 58 hours of work and that he earned nine dollars per hour. 
Thus, the record supports $522 in Pruitt's lost wages.

 Because the trial court did not issue findings of fact or conclusions of law
regarding damages, we presume that the remaining $2,434.61 in damages are
attributable to Pruitt's physical pain and suffering as a result of his injuries. See
Powell v. McCauley, 126 S.W.3d 158, 161 (Tex. App.--Houston [1st Dist.] 2002, no
pet.) ("If . . . a trial court does not file findings of fact and conclusions of law, we
must presume that the trial court made the findings necessary to support its
ruling . . . ."). In challenging this portion of the award, Best Western fails to provide
any legal analysis or authority. We conclude, therefore, that this point of error is also
inadequately briefed. See Tex. R. App. P. 38.1(h). 

 We overrule Best Western's third point of error.

Conclusion

 We affirm the judgment of the trial court.

 


 Evelyn V. Keyes

 Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.
1. Best Western argues on appeal that Pruitt was a licensee and not an invitee. This argument
is waived, however, because Best Western did not argue at trial or in its motion for new trial
that Pruitt was a licensee and it raises this argument for the first time on appeal. See Tex. R.
App. P. 33.1. Therefore, because Pruitt pleaded invitee status and the trial court made the
implied finding that Pruitt was an invitee, we will treat him as such. Holt Atherton Indus.,
Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992) ("In a nonjury trial, where no findings of fact
or conclusions of law are filed or requested, it will be implied that the trial court made all the
necessary findings to support its judgment.").