Opinion issued August 9, 2007








 










In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00255-CV






SHAOGUANG HE, Appellant


V.


WEN HONG JIANG, Appellee






On Appeal from the 190th District Court

Harris County, Texas

Trial Court Cause No. 2004-16944






MEMORANDUM OPINION ON REHEARING

 We issued our opinion and judgment in this case on May 3, 2007. Jiang filed
a motion for rehearing on June 18, 2007. We deny Jiang's motion for rehearing. 
However, our prior opinion and judgment of May 3, 2007 are vacated, set aside, and
annulled, and this opinion and judgment are issued in their stead. 

 Appellant, Shaoguang He, appeals from a judgment rendered upon a jury's
award of damages for breach of contract and fraud in favor of appellee, Wen Hong
Jiang. In two issues, He argues that (1) the statute of frauds bars Jiang's recovery and
(2) the evidence is legally insufficient to support the judgment. 

 We reverse and render.

Facts and Procedural History

 He and Jiang first met each other in 2001 in Houston. Sometime thereafter, He
and Jiang entered into an agreement. 

 According to He, Jiang approached him about doing some investment work for
her. He agreed, testifying that Jiang had agreed to pay him $100,000 per year for his
work. At the end of one year, Jiang refused to pay He for his work because she had
not yet made any profits on her investments, but she agreed that she would pay him
at the end of the following year for two years' work. At the end of two years,
however, Jiang did not pay He for his work. 

 According to Jiang's testimony, she and He had entered into an agreement
whereby He would borrow money from Jiang, make interest payments at specified
intervals, and ultimately return the principal to Jiang.

 From December 2001 through July 2002, Jiang made seven payments to He
pursuant to their alleged agreement totaling $453,000. Of this, $200,000 was given
to He directly; $100,000 was wired to a company named De Li Industries; and
$153,000 was wired to another company named Guanging Honda, of which He is a
shareholder. Of the $200,000 sent to He directly, the transfer of $150,000 is
memorialized in two writings (1) signed by He and given to Jiang on June 21, 2002. 
The first writing ("first Agreement of Cooperation") provided:

Agreement of Cooperation

 I received $50,000.00 (fifty thousand dollars) from Wenhong Jiang to
purchase U.S. stocks. Stocks will be purchased through mutual
consultation. I will return premium along with the interest to Wenhong
Jiang when profits are realized.


 Participant:

 Shaoguang He (signature)

 6/21/02


The second writing ("second Agreement of Cooperation") provided:


Agreement of Cooperation


 I received $100,000.00 (one hundred dollars) [sic] from Wenhong Jiang. 
(The first part of $33,400.00 was received on 3/25/2002; the second part
of $66,600.00 was received on 5/7/2002.) The term of the agreement is
one year. I agree to pay the interest of $6000.00 every 70 days and there
will be five times for such payments. Afterwards I will pay the interest
by days. The date to start to calculate interest is 3/25/2002. The first
pay date for the interest is 7/16/2002. I agree to return premium along
with interest after one year.


 By:

 Shaoguang He (signature)

 6/21/02

 Ten days after Jiang's last payment to He, He executed a third writing: (2)

Calculation Methods


 Profits of $100,000.00:

 360 days per year:

 Every 70 days, interest earned: $6,000.00

 For one year (360 days), interest earned: $6,000.00 x 1 + $857.00 =
$6,857.00


 Profit of the first $33,400.00:

 42 days x $33,400.00 x 0.000857 (profit per day of $1.00) = $1,202.00


 Profit due to Wenhong Jiang by 7/16 is:

 $6,000.00 + $1,202.00 = $7,202.00


 Shaoguang He (signature)

 7/15/02


 (Note: based on the opinion of Wenhong Jiang, the profit of $7,202.00
will be put into the toy business, starting to calculate interest on
$7,202.00 from 7/17. Starting to calculate interest on $153,000.00 from
7/12).

 From January 2002 through January 2004, He made twelve payments to Jiang
totaling $220,510. When Jiang did not pay He for the investment work he had done
for her, He filed suit against Jiang alleging breach of contract. In her second
amended original answer, Jiang alleged counterclaims for breach of contract and
fraud.

 In considering the evidence, the jury was required to consider several questions
about the facts and to answer "yes" or "no." The jury found that He and Jiang had
entered into an agreement but that only He had failed to comply with that agreement,
and it awarded to Jiang $232,500 in damages. The jury also found that He had
committed fraud against Jiang, and it awarded an additional $41,900 in direct and
consequential damages.

 On November 30, 2005, He filed a motion for judgment notwithstanding the
verdict and a motion to disregard jury findings, arguing that "[a] directed verdict
would have been proper in this case, because there is no evidence to support any of
the answers to the jury questions. Accordingly, the jury's answers should be
disregarded and a take nothing judgment on the entire case should be entered." On
December 19, 2005, the trial court denied He's motions, and, based on the jury's
findings, rendered (a) a take-nothing judgment against He and in favor of Jiang on
He's breach of contract claim and (b) a judgment in favor of Jiang and against He on
Jiang's breach of contract and fraud claims for $274,400.

 On June 16, 2006, He filed a motion for a new trial alleging that Jiang had
presented no evidence to support her causes of action against him. The record does
not reflect whether the court ruled on this motion. Consequently, it was overruled by
operation of law. See Tex. R. Civ. P. 329b(c).


Legal Sufficiency In his second issue, He contends that the evidence is legally insufficient to
support the trial court's judgment for breach of contract and fraud. In conducting a
legal sufficiency review, we consider all the evidence in the light most favorable to
the prevailing party. Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc., 175 S.W.3d
284, 300 (Tex. App.--Houston [1st Dist.] 2004, pet. denied). We indulge every
reasonable inference in that party's favor and disregard all evidence and inferences
to the contrary. Id. When, as here, the complaining party challenges the legal
sufficiency of the evidence underlying an adverse finding on which he did not have
the burden of proof, he must demonstrate that there is no evidence to support the
finding. Id. If more than a scintilla of evidence supports the finding, the no-evidence
challenge fails and the finding is legally sufficient. Id. (citing Lee Lewis Constr., Inc.
v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001)).

 Breach of Contract

 He argues that the evidence supporting the breach of contract portion of the
judgment is insufficient because (1) no verbal or written agreement existed in which
He agreed to pay $232,500 to Jiang and (2) Jiang testified that she had lost the
$232,500 because she had met He, not because he had breached any agreement.

 The elements of a breach of contract claim are that (1) a valid contract existed;
(2) the plaintiff performed or tendered performance; (3) the defendant breached the
contract; and (4) the plaintiff was damaged as a result of the breach. Hussong v.
Schwan's Sales Enters., Inc., 896 S.W.2d 320, 326 (Tex. App.--Houston [1st Dist.]
1995, no writ). Whether a particular agreement constitutes a valid contract is
generally a question of law. Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663,
678 (Tex. App.--Houston [1st Dist.] 1996, no writ). A valid contract is formed by
an offer, an acceptance, a meeting of the minds, each party's consent to the terms,
and, in the case of a written contract, execution and delivery of the contract with the
intent that it be mutual and binding. Baroid Equip., Inc. v. Odeco Drilling, Inc., 184
S.W.3d 1, 17 (Tex. App.--Houston [1st Dist.] 2005, pet. denied). However, if an
alleged agreement is so indefinite such it is impossible for a court to fix the legal
obligations and liabilities of the parties, the agreement cannot constitute an
enforceable contract. Shaw v. Palmer, 197 S.W.3d 854, 856 (Tex. App.--Dallas
2006, pet. denied); accord T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218,
221 (Tex. 1992) ("In order to be legally binding, a contract must be sufficiently
definite in its terms so that a court can understand what the promisor undertook.").

 At trial, Jiang testified that He proposed an agreement whereby He would
borrow money from Jiang, make interest payments at specified intervals, and
ultimately return the principal to Jiang. Thus, according to her testimony, Jiang
entered into a loan agreement with He. 

 In our original opinion, we held that Jiang did not present sufficient evidence
from which the jury could have identified the material terms of the alleged contract
because she did not present any evidence regarding how much money she had agreed
to loan to He. In her motion for rehearing, Jiang challenges this finding, arguing that
the amount she transferred to He--$453,000--was legally sufficient evidence of the
amount she agreed to loan to him. In his response to Jiang's motion for rehearing, He
concedes this point. He argues, however, that Jiang's breach of contract claim still
fails because Jiang did not present legally sufficient evidence of the remaining
elements of a contract to loan money. 

 In a contract to loan money, the material terms are generally (1) the amount to
be loaned; (2) the maturity date of the loan; (3) the interest rate; and (4) the terms of
repayment. Farah, 927 S.W.2d at 678. Regarding the $33,400 and $66,600 loaned
to He and memorialized in the second Agreement of Cooperation, there is legally
sufficient evidence of a contract to loan money. According to the agreement, He
received a total of $100,000 from Jiang, which is evidence of the amount Jiang agreed
to loan to He. The agreement also states, "I [He] agree to return premium along with
interest after one year." Assuming that use of the word "premium" was a mistake in
translation and that the parties intended it to read "principal," this language is
evidence of the loan's maturity date. The agreement further states that He agrees to
pay $6,000 in interest every 70 days and that, thereafter, he will "pay the interest by
days"; that interest will begin to accrue on March 25, 2002; and that the first interest
payment will be made on July 16, 2002. (3) This is evidence of the interest rate and the
terms of repayment. We conclude, therefore, that there is legally sufficient evidence
of a contract to loan money for the $100,000. See Scottsdale, 175 S.W.3d at 300.

 Regarding the remaining five transfers of money to He and companies selected
by He totaling $353,000, Jiang failed to present any evidence regarding the maturity
dates, interest rates, and terms of repayment for these transfers or to show that they
fell within the terms provided by the second Agreement of Cooperation. (4) Because all
three terms are material in a contract to loan money and it is impossible to ascertain
these terms, the alleged loan agreement or agreements for the amounts totaling
$353,000 cannot constitute an enforceable contract. See Shaw, 197 S.W.3d at 856
(noting that if alleged agreement is so indefinite that it is impossible for court to fix
legal obligations and liabilities of parties, agreement cannot constitute enforceable
contract); Farah, 927 S.W.2d at 678 (setting out material terms of contract to loan
money). We conclude, therefore, that Jiang failed to present legally sufficient
evidence of one or more contracts to loan money for the remaining $353,000 that
Jiang transferred to He and companies selected by He. See Scottsdale, 175 S.W.3d
at 300.

 In short, although the record shows that Jiang transferred $453,000 to He and
companies selected by He, the evidence is sufficient only to show a contract to loan
$100,000. The record also shows that from May 2002 to January 2004, He returned
to Jiang $212,010, (5) $112,010 more than Jiang sent to He pursuant to the second
Agreement of Cooperation. The evidence, therefore, is insufficient to show that Jiang
was damaged by any breach of contract that He may have committed. See Hussong,
896 S.W.2d at 326. Because damages are an essential element of breach of contract,
we conclude that the evidence is legally insufficient to establish Jiang's counterclaim
for breach of contract. See id.

 We sustain the breach of contract portion of He's second issue.

 Fraud

 He contends that the evidence supporting the fraud portion of the judgment is
insufficient because Jiang testified that she had lost the $232,500 because she had met
He, not because he made any false representations to her.

 To recover on an action for fraud, the party must prove: (1) a material
representation was made; (2) it was false; (3) when the speaker made the
representation, he knew it was false or made it recklessly without any knowledge of
the truth and as a positive assertion; (4) the speaker made it with the intention that it
should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the
party thereby suffered injury. Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex.
1997).

 Jiang did not produce evidence on all of the elements of fraud. At trial, Jiang
testified that He proposed an agreement whereby He would borrow money from
Jiang, make interest payments at specified intervals, and ultimately return the
principal to Jiang. Jiang failed to present any evidence, however, that these
statements were false. See Solis, 951 S.W.2d at 390. Rather, the record shows that
from May 2002 to January 2004, He returned to Jiang $212,010, $112,010 more than
Jiang sent to He pursuant to the second Agreement of Cooperation. Thus, the
evidence is legally insufficient to establish the fraud portion of the judgment. See
Scottsdale, 175 S.W.3d at 300.

 We sustain the fraud portion of He's second issue. (6)



Conclusion

 We reverse and render a take-nothing judgment against Jiang and in favor of
He with respect to Jiang's counterclaims for breach of contract and fraud.

 

 

 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.




1. Both writings were written in Mandarin and translated into English for trial.
2. This writing was written in Mandarin, as well, and translated into English for trial.
3. The "Calculation Methods" writing memorialized on July 15, 2002 clearly refers to the
calculation of the returns due to Jiang from He on this $100,000.
4. The first Agreement of Cooperation executed the same day as the second Agreement of
Cooperation memorializes an agreement to transfer $50,000 from Jiang to He "to purchase
U.S. stocks . . . through mutual consultation." It, therefore, appears to be a stock purchase
agreement and not a loan. However, it also references the return of a "premium" and
"interest" when "profits are realized," but it does not set any rate or amount of interest, any
maturity date, or any terms of repayment. There is no written evidence of any of the terms
under which the remaining $303,000 was transferred to He from Jiang. Nor did the
testimony at trial elucidate these terms.
5. In January 2002, He transferred $3,500 to Jiang. Almost a month later, He transferred
$5,000 to Jiang. Thus, the total amount of money Jiang received from He is $220,510.
6. Because our resolution of He's second issue is dispositive of his first issue, we need not
reach his first issue. See Tex. R. App. P. 47.1.